THE STANDARD CASING COMPANY, INC., Respondent, v. CALIFORNIA CASING COMPANY, INC., Appellant.

**Sale — action for breach of contract — sale "f. o. b. the point of shipment" — title passes at moment of delivery to carrier — reservation of privilege of inspection does not place goods in transit at risk of consignor — risk unaffected whether bill of lading is made out to buyer or seller — upon default market values at place of shipment and not at destination measure of damages.**

1. Where delivery of goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery

2. The general rule is that upon a sale "f. o. b. the point of shipment," title passes from the seller at the moment of delivery to the carrier, and the subject of the sale is thereafter at the buyer's risk. The reservation by a consignee of the privilege of inspection does not place the goods while in transit at the risk of the consignor. The risk of transit is the buyer's whether the bill of lading is made out to him or to the seller.

3. Where by the terms of a contract for the sale of goods the undertaking is merely that they will be delivered to the carrier, the place where that was to be done as it would be the place of final performance by the seller if the contract had been kept, must be the place also of default when performance was refused. Market values at the place of shipment and not market values at the place of destination must, therefore, be the measure of the value of the bargain. (*Seaver* v. *Lindsay Light Co.*, 233 N. Y. 273, followed.)

*Standard Casing Co.* v. *California Casing Co.*, 197 App. Div. 187, reversed.

(Argued April 27, 1922; decided May 31, 1922.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1921, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Frederick C. McLaughlin* for appellant.  If the payment and inspection clause had been omitted, the contract would have called for delivery at San Francisco, with a right of inspection in the buyer at the place of destination.  The place of delivery for the purpose of measuring damages is the f. o. b. place of shipment, and not the place of destination.  (*Woodland Lumber & Mfg. Co.* v. *Barnet*, 185 App. Div. 572; *Pierson* v. *Crooks*, 115 N. Y. 539; *Pope* v. *Allis*, 115 U. S. 363; Williston on Sales, § 473; Sedgwick on Damages [9th ed.], § 738; *Woodland L. & Mfg. Co.* v. *Barnett*, 185 App. Div. 572.)

*M. E. Kelley* for respondent.  Under the contract of sale here, the seller was required to deliver the goods in New York.  The f. o. b. provision of the contract dealt only with the price, not with the place of delivery.  (*Willits* v. *Abekobei & Co.*, 197 App. Div. 528; *Boss* v. *Hutchinson*, 182 App. Div. 88, 90; *Maddaloni Olive Oil Co., Inc.,* v. *Aquino*, 191 App. Div. 51, 55; *Miller & Sons Co.* v. *Sergeant Co.*, 191 App. Div. 814; *Schopflocher* v. *Essgee Co.*, 197 App. Div. 781; *United States* v. *Andrews & Co.*, 207 U. S. 229; *Dannemiller* v. *Kirkpatrick*, 201 Penn. St. 218; *F. & M. Nat. Bank* v. *Logan*, 74 N. Y. 568; *Pottash* v. *C., etc., Co.*, 197 App. Div. 763; *Ullman* v. *Wormer, etc., Co.*, 210 N. Y. 41.)  The market price of the goods in San Francisco, the shipping point, was immaterial, and evidence thereof was inadmissible.  (*Saxe* v. *Penokee, etc., Co.*, 159 N. Y. 371; *Varagnola* v. *Partola Co.*, 189 App. Div. 234; *Fowler* v. *Gress Mfg. Co.*, 94 Misc. Rep. 650.)

CARDOZO, J.  The plaintiff, the buyer, sues the defendant, the seller, for the breach of a contract, made in San Francisco, California, upon terms which are stated as follows in the seller's letter of confirmation:

" SAN FRANCISCO, *December* 18, 1917.
" THE STANDARD CASING CO., INC.,
      " 206 East 56th Street,
         " New York City, N. Y.:
" We have this day sold you the following:
" Twenty (20) casks of salted pig guts, each about three thousand bundles.
" Shipment: January, February and not later than the fifteenth of March, 1918.
" Quality: Salted pig guts, as previous shipment.
" Price: Eighteen cents United States Gold coin per bundle f. o. b. San Francisco.
" Packing: Bundles of not more than three pieces measuring in all thirteen meters, no piece to be shorter than one meter.  Width, 60% from 25/29/m/m and 40% from 29/31/m/m.
" Payment: Sight draft, bill of lading attached with the privilege of examining the goods on arrival.
      " CALIFORNIA CASING COMPANY, INC.
            " Per B. NEUSTADTER,
                                          *" President."*

None of the shipments were made, and the seller's breach is conceded.  The only question before us is the extent of the recovery.  The plaintiff, to prove its damages, gave evidence of the market value in New York.  The defendant offered evidence, which the court could not receive, of the market value in San Francisco.  Judgment has been rendered on the theory that performance by the seller involved delivery to the buyer at the point of destination, and not merely delivery to the carrier at the point of shipment.  We read the contract differently.

The general rule is that upon a sale " f. o. b. the point of shipment," title passes from the seller at the moment of delivery to the carrier, and the subject of the sale is thereafter at the buyer's risk (Williston, Sales, sec. 280, p. 409; *U. S.* v. *Andrews & Co.*, 207 U. S. 229, 241; *Detroit Southern R. Co.* v. *Malcomson*, 144 Mich. 172). The operation of the rule is, of course, subordinate to intention. We find nothing in this contract by which an inconsistent intention is adequately revealed. The plaintiff sees in two provisions the tokens of a purpose that arrival at the point of destination shall be a condition of performance. One is the provision that after arrival at New York the buyer may inspect. The other is that, subject to such inspection, payment shall be made on presentation of a draft with bill of lading attached. We think that each is inconclusive.

The reservation by a consignee of the privilege of inspection does not place the goods while in transit at the risk of the consignor (*Pierson* v. *Crooks*, 115 N. Y. 539, 546, 548; *Pope* v. *Allis*, 115 U. S. 363; *D., L. & W. R. R. Co.* v. *U. S.*, 231 U. S. 363, 371). The privilege is often implied (Williston, Sales, secs. 473, 474). Its expression in this instance qualifies any inference of acceptance resulting from the requirement of payment upon presentation of the draft (Pers. Prop. Law [Cons. Laws, ch. 41], sec. 128, subd. 3). Whether expressed or implied, it does not change the incidence of the risk. Title passes upon shipment, though subject to the right of rescission upon the discovery of defects (*D., L. & W. R. R. Co.* v. *U. S., supra*).

The incidence of the risk is unaffected also by the right, retained by the defendant, to determine whether the bill of lading should run to consignor or to consignee. It is true that " where goods are shipped, and by the bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods " (Pers.

Prop. Law, sec. 101, subd. 2). The reservation, however, is not absolute. "If, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract" (Pers. Prop. Law, sec. 101, subd. 2). A property thus reserved as security only does not relieve the buyer from subjection to the perils of the transit. "Where delivery of goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery" (Pers. Prop. Law, sec. 103, subd. a; *Alderman Bros. Co.* v. *Westinghouse Air Brake Co.*, 92 Conn. 419, 421; *Kinney* v. *Horowitz*, 93 Conn. 211).

We assume in favor of the plaintiff that the law of California, the place of the making of the contract, controls the obligation of the seller in respect of shipment and delivery. We are not advised that the Uniform Sales Law has been adopted in that state. We think, however, that the statute in the provisions above quoted is declaratory of the rule at common law. There was, indeed, more or less of uncertainty in the common-law decisions, for general statements that there was reservation of the property if the bill of lading was made out to the order of the consignor were not always coupled with the qualification that the property, if it would otherwise be divested, might be deemed to be retained as security, and nothing more (Williston, Sales, sec. 284, supplemented by the same author's review of the authorities in 34 Harvard Law Review, 751). There were cases, none the less, where the qualification was not ignored (*Browne* v. *Hare*, 4 H. & N. 823; *Inglis* v. *Stock*, 10 App. Cas. 263; *Joyce* v.

*Swann,* 17 C. B. [N. S.] 84; *Dows* v. *Nat. Exch. Bk. of Milwaukee,* 91 U. S. 618, 634; *Higgins* v. *Murray,* 73 N. Y. 252, 255; *Farmers & Mechanics Nat. Bk. of Buffalo,* v. *Logan,* 74 N. Y. 568, 579, 581, 582; Williston, *supra;* Benjamin on Sales [5th ed.], p. 386). The framers of the statute extracted from uncertain judgments the rule which they found to be in principle the soundest, with the purpose, here at least, to codify, but not to change. The record does not inform us that a different rule has been established by the courts of California. In the absence of such a showing, we accept the codification as a statement of the rule at common law. Doubts, if there are any, may well be resolved in favor of the ruling that will make for the larger uniformity.

We hold, then, that the risk of transit was the buyer's, whether the bill of lading was made out to him or to the seller (*Inglis* v. *Stock,* 10 App. Cas. 263; *Alderman Bros. Co.* v. *Westinghouse Air Brake Co.,* *supra;* *Higgins* v. *Murray,* *supra*). If that is so, the seller's performance would be complete upon the beginning of the transit. There was no undertaking that the goods would reach their destination (*Calcutta & B. S. N. Co.* v. *DeMattos,* 32 L. J. N. S. 322). The undertaking was merely that they would be delivered to the carrier. The place where that was to be done, as it would be the place of final performance by the seller if the contract had been kept, must be the place also of default when performance was refused. Market values in California, and not market values in New York, must, therefore, be the measure of the value of the bargain (*Seaver* v. *Lindsay Light Co.,* 233 N. Y. 273; Pers. Prop. Law, sec. 148). No doubt in any case of delivery to a carrier, the expectation of the buyer is that the goods will reach their destination. That is not enough to transfer to the point of destination the computation of the damages resulting from the consignor's default. On this subject, our recent decision in *Seaver* v. *Lindsay Light Co.* (*supra*) is sufficient and precise

authority (cf. 2 Sedgwick on Damages [9th ed.], sec. 738). The damages are to be estimated according to the conditions prevailing at the place where the final act of performance was due from the vendor. This, at least, is the general rule. Market conditions or other special causes may make departure from it necessary in obedience to the fundamental requirement of reparation for the loss (Pers. Prop. Law, secs. 148, 145). None of these causes or conditions is shown to justify departure here.

We do not overlook the fact that the provision for shipment " f. o. b. San Francisco," is found in a paragraph headed, not " delivery," but " price." The plaintiff argues from this that its only effect was to impose upon the buyer the duty to pay the freight as an addition to the price, and not to fix the point at which delivery would be made. There might be force in this argument if the subject of delivery were covered in other subdivisions. Without that, little, if any, significance can be accorded to the caption. We think the phrase in question must be deemed to regulate delivery, *first*, because it has a commercial significance not readily displaced or superseded, and, *second*, because there is a general presumption, which must prevail as against mere uncertainty or silence, that delivery to a carrier is delivery to the buyer (Pers. Prop. Law, sec. 127; *Rodgers* v. *Phillips*, 40 N. Y. 519; Benjamin, Sales [5th ed.], p. 737).

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.