WILLIAM WHITMAN COMPANY, INC., Plaintiff, *v.* HERBERT W. WITCOMBE and GEORGE MCGEACHIN, Defendants.

Supreme Court, New York County, May 1, 1924.

Sales — passing of title — action for balance of purchase price of goods to be manufactured — buyer sought to rescind contract for sellers' failure to deliver — payments to be made on agreed dates, irrespective of shipment — buyer assented to appropriation of goods to contract pursuant to Personal Property Law, § 100, rule 4, subd. 1 — shipment not prerequisite to transfer of title — meaning of word " invoice "— law will be conformed to mercantile concept of seller's right to recover purchase price.

In an action for the balance of the purchase price of goods to be manufactured and sold by the plaintiff it appeared that shipments were to be made in three installments at dates subsequent to the making of the contract, and that the buyers, after paying for two of the invoices, sought to rescind the contract because of the seller's failure to deliver, and also on the ground that the delivered merchandise was defective. *Held,* that the goods were appropriated to the contract with the assent of the buyers in accordance with Personal Property Law, section 100, rule 4, subdivision 1, and that shipment was not prerequisite to transfer of title since the evidence indicated an agreement on the part of the buyers to pay the price of the goods on a day certain " irrespective of delivery or transfer of title," which agreement called on the seller not to ship, but only to invoice.

The word " invoice," in this instance, does not mean the equivalent of " bill and deliver."

The considerations which sustain the inference of transfer of title also justify the conclusion that payment was to be made on the agreed dates irrespective of shipment.

The trend of contemporary decisions is to conform the law with the mercantile concept of a seller's right to recover the purchase price.

ACTION to recover purchase price of goods.

*Rabenold & Scribner* (*Allan R. Campbell,* of counsel), for the plaintiff.

*George Ryall,* for the defendants.

PROSKAUER, J. In February, 1920, plaintiff contracted to sell and defendants to buy cloth to be manufactured, dates of shipment to be October, November and December. A sharp market drop caused defendants frequently to seek indulgence as to price, time of payment and delivery. On December 17, 1920, " the following mutual arrangement for payment " was confirmed by letter. The merchandise covered by the October and November invoices was paid for by trade acceptances, with the merchandise as security; " the balance of the order will be invoiced half about March 1, 1921 and half April 1, 1921 on the contract terms — 2/10/60, due May 10, 1921 and June 10, 1921." The October and November invoices have been paid. This suit is for the price of the balance.

On March 1 and April 1, 1921, plaintiff sent the invoices for the remaining goods, then in deliverable state and definitely appropriated to the contract. While plaintiff did not follow the previous practice to deliver to the buyer's store, defendants retained the March first invoice for ten weeks and the April first invoice for over six weeks without objection or request for delivery. Indeed, on March seventeenth, defendants, overlooking that they had received the March invoice, wrote: " We would be glad if you will kindly invoice as per your letter, that is, half the quantity to be invoiced in March and the other half in April with the usual terms, 2–10–20." Thereafter defendants urged a claim, abandoned on the trial, that the delivered merchandise was defective, and by letter of May seventeenth, more than ten weeks after the March invoice, again asserted the claim of defects, and continued: "As to this remaining merchandise which you have invoiced but failed to deliver at the time agreed upon, we hereby rescind our contract."

The appropriation of the goods to the contract was with the assent of the buyer in accordance with the Personal Property Law, section 100, rule 4, subdivision 1. *Boiko & Co.* v. *Atlantic Woolen Mills*, 195 App. Div. 207; affd., 234 N. Y. 583; *Berkshire Cotton Mfg. Co.* v. *Cohen*, 236 id. 364; *Pignataro* v. *Gilroy*, (1919) 1 K. B. 459. This assent may be " expressed or implied and either before or after the appropriation." An inference of fact is here to be drawn from undisputed evidence. Defendants claim that shipment was prerequisite to transfer of title. But the letter of December 17, 1920, confirmed an agreement not as to deliveries, but as to a " mutual agreement for payment." Though defendants knew the merchandise could be shipped within three or four hours, their letter of March 17, 1921 (two weeks after the March invoice), requested, not shipment, but only invoices. Again, ten days after the May invoice, defendants made a complaint as to quality, but no request

for shipment.   The claim of breach by non-shipment was an after-thought thrown as a makeweight into the letter of May seventeenth.

Professor Williston in 34 Harvard Law Review, 748, discussing *Pignataro* v. *Gilroy*, writes: " The seller, without previous authority so to do, appropriated certain goods to the buyer, which were of the kind and quality that contract between them required, and notified the buyer of the fact.   No reply to this notification was made by the latter.   The court held, and it seems rightly, that unless the buyer under such circumstances sends a prompt notice objecting to the appropriation, he must be deemed to assent thereto. The case is interesting not simply for the specific point decided in the law of sales, but with reference to the general question of when silence may be regarded as assent."   The significance of the silence as to shipment is intensified by the expression of other objections.

The seller's obligation to ship became a condition subsequent. In *Berkshire Cotton Mfg. Co.* v. *Cohen*, 236 N. Y. 364, 370, the contract was for the sale of future goods; thereafter the seller stored the goods, in deliverable condition, in his warehouse and at the buyer's request postponed shipment.   Hogan, J., writes: " Bu¹ one inference can reasonably be deduced from the foregoing facts that the goods were in a deliverable state, that the same were uncon ditionally appropriated to the contract by the seller, with th assent of the buyers.   The fact that the goods were to be F. O. B at mill is immaterial in view of the contract and intentions of th· parties."   That in the *Berkshire* case the buyer insured the good is an additional but not essential fact tending to sustain the inferenc of assent.

The letter of December 17, 1920, also evidenced an agreemen to pay the price on a day certain " irrespective of delivery or transfe of title."   Pers. Prop. Law, § 144, subd. 2.   Purporting to be ¡ " mutual arrangement for payment," it called on plaintiff not t ship, but only to invoice.   While often the word " invoice" fron context and surrounding circumstances means the equivalent o " bill and deliver," such was not the intention here.   The pric of these goods should have been paid within seventy days fron November 1, 1920.   The agreement of December seventeentl extended this time to seventy days from April first, grace of fiv months.   Defendants had little interest in delivery; they wer concerned with getting delay of payment.   The consideration which sustain the inference of transfer of title also justify th conclusion that payment was to be made on the agreed dates irrespective of shipment.

The right to recover purchase price should not be obstructec by over-technical interpretation of the statutory provisions

" Slight evidence is accepted as sufficient to show that title passes * * * though the seller is to make a delivery." *McElwee* v. *Metropolitan Lumber Co.*, 69 Fed. Rep. 302, cited in Benj. Sales, § 329 and Willis. Sales, § 280.

The merchant, failing to receive payment on the day fixed, expects this specific relief. The trend of contemporary decisions is to conform the law with this mercantile concept of the seller's rights.

Verdict directed for plaintiff for $11,752.29, with interest on $7,606.83 from May 10, 1921, and on $4,145.46 from June 10, 1921.

Judgment accordingly.